**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | : | |
|---|---|---|
| **JAMES LYONS,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:16-1513 |
| v. | : | (JUDGE MANNION) |
| **SALEM TOWNSHIP and** | : | |
| **FRED WESTOVER,** | : | |
| Defendants | : | |

# M E M O R A N D U M

Pending before the court is a motion to dismiss the plaintiff's complaint brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6) by defendant Salem Township ("Township"). (Doc. 8). The Township seeks dismissal of all the claims in the complaint brought against it by the plaintiff, James Lyons. (Doc. 1). For the reasons that follow, the Township's motion to dismiss will be **GRANTED** and the plaintiff's complaint dismissed, as to Salem Township only, without prejudice, in order to allow the plaintiff to file an amended complaint if he so chooses.

## I. PROCEDURAL BACKGROUND

On July 22, 2016, the plaintiff, James Lyons, brought this civil rights suit pursuant to 42 U.S.C. §1983 against defendants Fred Westover, an officer with the Salem Township Police Department, and Salem Township itself on a theory that the Township failed to effectively train defendant Westover.

(Doc. 1). In Count I of the complaint, the plaintiff alleges a violation of his Fourth and Fourteenth Amendment rights under the Constitution of the United States. In Count II, the plaintiff alleges he was falsely arrested as a result of the defendants' conduct. In Count III, the plaintiff alleges the defendants falsely imprisoned him.

On August 26, 2016, the Township filed the pending motion to dismiss the plaintiff's complaint, (Doc. 8), along with a brief in support thereof, (Doc. 9). On October 10, 2016, the plaintiff filed a brief in opposition to the motion to dismiss. (Doc. 11).

**II.     STANDARD OF REVIEW**

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must

be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [necessary elements]" of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to

3

dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

**III.     DISCUSSION**

The allegations of the plaintiff's complaint, which are accepted as true for purposes of the instant motion, provide that, on or near July 22, 2014, a call concerning a potential rape that occurred on July 21, 2014, came in to Officer Fred Westover of the Salem Township Police Department, whereby he was dispatched to investigate further. (Doc. 1, at ¶15). Defendant Westover was informed that the victim had been raped by the plaintiff. (Id.). Upon arriving at the alleged victim's house to investigate, defendant Westover questioned the alleged victim, whom he had known to be mentally challenged and to have a low I.Q., and she told him she had been raped by the plaintiff. (Id. ¶¶16-17). Defendant Westover subsequently took the alleged victim to the

4

Berwick Hospital to complete a rape kit, but after the kit was completed, defendant Westover removed the kit from the hospital and never published its results, which still remain unknown. (Id. ¶¶18-19).

The plaintiff was subsequently arrested, processed, and incarcerated in the Luzerne County Correctional Facility for forty days, where he was allegedly threatened and harassed by other inmates in the facility. Additionally, the plaintiff allegedly suffered physical injuries during his time at the prison. (Id. ¶20).

In October 2014, the plaintiff attended his preliminary hearing, where the alleged victim stated she had no recollection of talking to the police, stated that she did not wish to proceed with the prosecution, stated that she wanted to drop all charges, and stated that she was not afraid of the plaintiff. (Id. ¶21-25). Significantly, the alleged victim also stated that the plaintiff never did anything to her that she did not like. (Id. ¶27). At the hearing, the Commonwealth never reported or used the results of the rape kit taken at the hospital, nor did they present any evidence of bruising or other injuries on the victim or physical evidence to show the alleged victim had been raped. (Id. ¶¶28-29). Therefore, the charges against the plaintiff were dismissed.

In the complaint, the plaintiff alleges that defendant Westover had no probable cause or corroborating evidence to lawfully arrest him for the sexual assault of the alleged victim. More specifically, in Count I, the plaintiff alleges

that the arrest under these circumstances amounted to an unreasonable seizure and detention, in violation of both his Fourth Amendment and Fourteenth Amendment rights. Further, in Count II and Count III, the plaintiff alleges state law claims of false arrest and false imprisonment, respectively.

Count I of the complaint is brought under 42 U.S.C. §1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" "causes to be subjected, any citizen" to the deprivation of his or her constitutional rights, may be liable to that person in a civil action to redress the deprivation. While the individual defendant has filed an answer (Doc. 7) denying the allegations, the plaintiff is also suing the Township, a municipality and subdivision of the Commonwealth of Pennsylvania, for the actions of defendant Westover, who for all times relevant to these proceedings was the agent and representative of the Salem Township Police Department. The question before the court is whether the plaintiff has sufficiently alleged that the Township is municipally liable to plaintiff for defendant Westover's conduct under 42 U.S.C. §1983.

The Township, in its brief in support of its motion to dismiss, argues that the plaintiff fails to sufficiently allege facts necessary to show that it should be municipally liable for the actions of defendant Westover. Specifically, the Township argues that the plaintiff has not shown that the municipality had a policy or custom, shown through a pattern of similar constitutional violations,

of failing to effectively train its officers in collecting evidence and establishing probable cause against a suspect. Further, the Township argues that the plaintiff has not sufficiently alleged that the municipality acted, through its policy or custom, with deliberate indifference to the constitutional rights of others.

The plaintiff, in his brief in opposition to the Township's motion to dismiss, responds that under certain circumstances, a plaintiff need not establish a pattern of similar constitutional violations, but rather can succeed on a claim of municipal liability by showing that the lack of training was so obviously and predictably going to result in constitutional violations that deliberate indifference by the municipality can be inferred. The plaintiff argues that, here, the municipality is aware that its officers are required, as a recurring and frequent part of their job, to collect evidence, establish probable cause, and subsequently arrest suspects, and that if probable cause is not established before a suspect is arrested, the individual's constitutional rights will be obviously and predictably violated. Therefore, the plaintiff argues that the failure to provide adequate training in this area constitutes deliberate indifference on the part of the Township.

The leading case on the issue of municipal liability under 42 U.S.C. §1983 is <u>Monell v. Department of Social Services of the City of New York</u>. In <u>Monell</u>, the Supreme Court concluded that Congress, in its promulgation of

7

42 U.S.C. §1983, intended to include municipalities and government bodies under the term "persons" in §1983, thereby making these entities liable to those whose constitutional rights they deprive. Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). The Supreme Court noted that, while in most circumstances under §1983 the municipality or government body will be liable for constitutional violations that arise from the entity's official policy, liability can also arise from constitutional violations resulting from a governmental body's custom, even though the custom was not formally promulgated by the governmental body's decision-makers as official policy. Monell, 436 U.S. at 690-91. A practice constitutes a custom when it is "so permanent and well settled" in the practices of the governmental body that it becomes the equivalent of its official policy. Id. at 691. Further, the Supreme Court noted that municipal liability under §1983 cannot be found solely on a theory of respondeat superior, or simply because the governmental body employed or supervised someone who committed a constitutional violation, but rather, the governmental body must have caused the violation in some way, either through official policy or custom. Id.

The Supreme Court in Pembaur v. City of Cincinnati ruled that even a single decision by an official decision-maker of the government represents official government policy, and the municipality becomes liable for the consequences of that decision regardless of whether it was meant to control

8

future behavior or actions, or whether it was a single, circumstance-based decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986). As stated by the court in Andrews v. City of Philadelphia, however, it is not always necessary for the decision-makers to issue an official proclamation or policy, but instead, municipal liability can, in the alternative, be shown through evidence that the municipality acquiesced in the violation through a custom or practice of the municipality so permanent and well-settled as to give it the force of law. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480-81 (3d Cir. 1990).

A plaintiff can, in limited circumstances, successfully allege a municipal policy or custom through a theory that the municipality failed to adequately train its employees on how to avoid constitutional violations in a certain area, but the municipality's liability in these situations is "at most tenuous". Connick v. Thompson, 563 U.S. 51, 61 (2011); Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985). In this circumstance, the plaintiff must show that the municipality acted with deliberate indifference to the rights of the persons the employees come into contact with. City of Canton v. Harris, 489 U.S. 378, 388 (1989). Typically, in cases where the alleged municipal custom or policy is the failure to adequately train its officers in some relevant area of law or practice, deliberate indifference can only be established by a showing of a pattern of constitutional violations due to the failure to train. Berg v. County of Allegheny,

9

219 F.3d 261, 276 (3d Cir. 2000). This is because a municipality usually cannot act deliberately concerning a training program it is not aware is deficient. Connick, 563 U.S. at 62. Through a pattern of similar violations, a municipality becomes aware of inadequacies in its training program, and any later violations stemming from the unchanged training program can rightfully be said to be a result of deliberate indifference on the part of the municipality. Bd. of County Comm'rs of Bryan County, 520 U.S. at 407.

However, in Board of the County Commissioners of Bryan County v. Brown, the Supreme Court did note that in a narrow set of circumstances, it may be possible to show deliberate indifference without such a pattern of constitutional violations stemming from the municipality's custom or policy, but the bar in these cases is very high. Bd. of County Comm'rs of Bryan County, 520 U.S. at 409. The Court stated that there are some situations that are so likely to cause constitutional violations from the failure to adequately train the officers in how to handle those circumstances, that a single incident, not necessarily repeated violations, can give way to municipal liability. Id. at 409.

The Supreme Court in Canton, explained that on a municipal liability claim on a failure-to-train theory, deliberate indifference can be sufficiently alleged by showing that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and [that] the inadequacy [of the current training]" will predictably lead to the violation of

constitutional rights of those the officer comes into contact with. City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989). Therefore, without a showing of a pattern of similar violations, the plaintiff must show a "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurrent situations" and there is a "likelihood of recurrence" that "could justify a finding that [the] policymakers' decision not to train an officer reflected deliberate indifference to the obvious consequence" of that decision. Bd. of County Comm'rs of Bryan County, 520 U.S. at 409.

In this case, there appears to be no question that the Township did not have an official policy promulgated by its final decision-makers that authorized the kind of constitutional violation alleged to have occurred here. Instead, the plaintiff alleges that the Township had a custom of inadequately training its officers in collecting evidence and establishing probable cause. The plaintiff did not allege a pattern of similar constitutional violations by the Township, which is usually necessary to establish a municipality's custom. Nor has the plaintiff sufficiently alleged the Township was deliberately indifferent to the constitutional rights of those its officers came into contact with or presented facts specifically to establish a custom. While the plaintiff elaborated on his claims in his brief in opposition to the Township's motion to dismiss, it is well-settled that a plaintiff cannot amend a complaint through the filing of a

11

brief, or through arguments set forth in a brief opposing a dispositive motion. See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir.1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir.1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir.2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rules 9(b) and 12(b)(6)"). In light of this, the complaint fails with regard to alleging deliberate indifference on the part of the Township. However, the plaintiff will be given the opportunity to amend the complaint to sufficiently allege deliberate indifference by the Township.

### IV. CONCLUSION

Based upon the foregoing, the motion to dismiss plaintiff's complaint (Doc. 8) will be granted as to the Township only, without prejudice, to allow the plaintiff the opportunity to file an amended complaint.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 31, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1513-01.wpd