# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| **JAMES LYONS,** | : | |
| Plaintiff | : | **CIVIL ACTION NO. 3:16-1513** |
| v. | : | **(JUDGE MANNION)** |
| **SALEM TOWNSHIP and FRED WESTOVER,** | : | |
| | : | |
| Defendants | : | |

## M E M O R A N D U M

Pending before the court is the defendants' motion for summary judgment. (Doc. 40). Based upon the court's review of the record in this action, the defendants' motion will be **GRANTED**.

### I. PROCEDURAL BACKGROUND

On July 22, 2016, the plaintiff, James Lyons, brought this civil rights action pursuant to 42 U.S.C. §1983 against defendants Fred Westover ("defendant Westover"), an officer with the Salem Township Police Department, and Salem Township ("Township"). (Doc. 1). The Township filed a motion to dismiss the plaintiff's complaint. (Doc. 8). By memorandum and order dated July 31, 2017, the court granted the motion to dismiss, without prejudice, to allow the plaintiff an opportunity to cure the deficiencies of his complaint relating to the Township's municipal liability claim (Doc. 16, Doc. 17). The plaintiff filed an amended complaint on August 14, 2017. (Doc. 18).

On August 28, 2017, the Township challenged the allegations of the plaintiff's amended complaint on the same bases raised in its original motion to dismiss. (Doc. 21). By order dated October 31, 2017, the defendant's motion was denied. (Doc. 26).

On December 10, 2018, the defendants filed the instant motion for summary judgment (Doc. 40) along with a statement of facts (Doc. 41) and supporting brief (Doc. 42). The plaintiff filed a brief in opposition to the defendants' motion (Doc. 45) and responsive statement of facts (Doc. 46) on January 10, 2019. On February 25, 2019, the defendants filed a reply brief (Doc. 49) and a response to the plaintiff's counter statement of facts (Doc. 50).

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome

of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

### III. DISCUSSION

Upon review, the defendants' undisputed facts of record demonstrate that, on July 22, 2014, at approximately 4:47 p.m., Karen Fenstemaker ("Ms. Fenstemaker") called 911 to report that the plaintiff had sexually assaulted his niece, Tanya Lyons ("Tanya"). The dispatch entry reads:

> 20 YOF MENTALLY CHALLENGED WAS
> SEXUALLY ASSAULTED THERE
>
> HAPPENED LAST NIGHT
>
> CALLERS SISTER LIVES THERE AND FEMALE
> TOLD HER THAT A MALE NAMED JIMMY LYONS
> THAT LIVES THERE ALSO RAPED HER MALE IS
> THE FEMALES UNCLE
>
> CALLER KAREN FENSTEMAKER . . .
>
> 3RD PARTY INFO
>
> CALLERS SISTER IS AT THE HOUSE NOW HER
> NAME IS CHRISTINA LYONS

> MALE IS ALSO AT THE HOUSE
>
> THE MENTALLY CHALLENGED FEMALE LIVES WITH THE GRAND PARENTS THERE

Ms. Fenstemaker was reporting second-hand what she had learned from her sister, Kristina Lyons. Tanya is the sister-in-law of Ms. Fenstemaker and Kristina Lyons. Ms. Fenstemaker reported that Tanya is 25 years old and mentally handicapped. She further reported that the rape happened a day earlier on July 21, 2014.

After the report to 911, Tanya and Kristina Lyons went to the police station for an interview with defendant Westover. Defendant Westover testified that Tanya indicated to him that, on or about July 20, 2014, she woke up during the night to the plaintiff getting in her bed. She stated that she tried to tell the plaintiff "no," but that the plaintiff "put his pee pee in her butt." In his affidavit of probable cause in support of the criminal complaint filed against the plaintiff, defendant Westover states that Tanya reported that this happened once a week or so and had been going on for some time. Kristina Lyons told defendant Westover that, on or about July 17, 2014, just days before this most recent incident, she saw the plaintiff outside of Tanya's bedroom fastening his pants.

Tanya testified in her deposition that she reported to defendant Westover that the plaintiff tried to rape her when she was 13 or 14 years old

5

when she was in a deep sleep after taking medication for seizures. This is consistent with a statement later given to defendant Westover by the plaintiff. The plaintiff is 21 years older than Tanya.

In a series of telephone calls on July 22 and July 23, 2014, law enforcement reported the information they had gathered to then Assistant District Attorney Jenny Roberts ("ADA Roberts").[1] ADA Roberts requested that Tanya undergo a rape kit examination, and Tanya went to the hospital that evening for a rape evaluation and medical examination. At the hospital, Tanya reported that "Uncle Jimmy 'forced' penetration of her rectum with his penis while she was sleeping." Upon examination, there was no physical evidence of sexual assault noted. ADA Roberts explained that this is common because victims typically shower, change clothes, or use the bathroom in the time between a sexual assault and actually reporting the assault to police. In this case, Tanya was not wearing the same underwear she had been wearing the night before.

An affidavit of probable cause was prepared by defendant Westover on July 22, 2014, and a criminal complaint was completed on July 23, 2014 charging the plaintiff with incest.[2] Defendant Westover testified that he did not

---

[1] Ms. Roberts is currently an Assistant United States Attorney.

[2] 18 Pa.C.S. §4302 - Incest -
(a) General rule.--Except as provided under subsection (b), a
(continued...)

remember whether he read the sexual assault evidence collection and interview record from the Berwick Hospital on Tanya before he filed the charges against the plaintiff. The criminal complaint was approved by ADA Roberts on July 23, 2014 with her testifying that she believed "there absolutely was probable cause for the charge." The criminal complaint was sworn before the Magisterial District Judge Hasay that same day and the affidavit of probable cause was approved for the plaintiff's arrest.

 According to the plaintiff, he was arrested at his house on July 23, 2014

---

[2](...continued)
person is guilty of incest, a felony of the second degree, if that person knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood.

(b) Incest of a minor.--A person is guilty of incest of a minor, a felony of the second degree, if that person knowingly marries, cohabits with or has sexual intercourse with a complainant who is an ancestor or descendant, a brother or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood and:

(1) is under the age of 13 years; or

(2) is 13 to 18 years of age and the person is four or more years older than the complainant.

(c) Relationships.--The relationships referred to in this section include blood relationships without regard to legitimacy, and relationship of parent and child by adoption.

by defendant Westover after which he gave a recorded statement at the police station.[3] In the statement, the plaintiff said "like once I did it up the [butt hole]."[4] Later in the interview, the plaintiff again stated, "This was a long time ago I did her up the butt hole with my penis." A third time, the plaintiff stated "That was a long time ago I did her once up the butt hole . . ." The plaintiff admitted that he told defendant Westover that he did her "up the butt" and said he was talking about "[his] niece," referring to Tanya. The plaintiff also stated that "a long time ago I shaved [my niece] . . .," referring to her vaginal area.

ADA Roberts interviewed Tanya before the preliminary hearing. Prior to doing so, ADA Roberts did not know the degree of Tanya's mental limitations. ADA Roberts remembers being told by defendant Westover that the plaintiff was "slow," but indicated that his description was not quantified. However, at the interview, ADA Roberts learned of the extent of Tanya's limitations and testified that, even after interviewing Tanya, she still "absolutely" believed there was probable cause to charge the plaintiff.

At the plaintiff's preliminary hearing on October 8, 2014, Tanya testified

---

[3]The plaintiff has not responded to the defendants' statement of facts 23-48. To the extent that those facts are supported by the record, they are deemed admitted pursuant to L.R. 56.1.

[4]As noted by the defendants, although the court reporter typed "bowell," it is clear from the context and the plaintiff's deposition that he said "butt hole."

8

that she talked to the police about her "uncle." ADA Roberts and Judge Hasay questioned Tanya at length, resulting in 25 pages of testimony. Tanya denied any recollection of what she told the police about the plaintiff and, halfway through the questioning, stated she wanted to drop the charges. At the end of the questioning, Tanya indicated that the plaintiff never did anything that she did not like. However, she never answered what the plaintiff did do, nor did she say what she told defendant Westover about the plaintiff. Because of the lack of testimony, the charges against the plaintiff were dismissed.

In response to the defendants' motion for summary judgment, the plaintiff has presented his own statement of material facts the following of which are not disputed. While defendant Westover took part in a three day training course offered by the Pennsylvania State Police on interview and interrogation techniques and dealt with people with mental disabilities over the years, he did not have specific training on interviewing or interrogating individuals with mental disabilities. Defendant Westover permitted Tanya's sister-in-law, Kristina Lyons, to be present during Tanya's interview.

Defendant Westover understood that the plaintiff was mentally disabled at the time that he interviewed him. Defendant Westover read the plaintiff his Miranda warnings after the plaintiff indicated he had never heard of Miranda warnings. After being read his Miranda warnings the plaintiff indicated he understood the warnings, but immediately thereafter asked "What's that

9

mean?" Defendant Westover explained that it meant that "anything you tell me today I can use, but you have the right not to talk if you don't want to. And, if you want to talk to a lawyer before you talk to me, you can do that." The plaintiff indicated that he did not have a lawyer, he could not afford one and his sister told him it was best to get a lawyer. Defendant Westover repeated that, if the plaintiff could not afford a lawyer, one would be appointed for him and repeated that, if at any time the plaintiff wanted to stop talking to him, the plaintiff could tell him and the conversation would stop until the plaintiff got a lawyer. The plaintiff proceeded to start talking about an incident with his niece that took place "a long time ago," at which time defendant Westover presented the plaintiff with a waiver of rights to sign. The plaintiff inquired as to whether the signing of the waiver meant that he was going to jail to which defendant Westover responded, "We don't know yet until after we get done talking to you. Okay. So, tell me what happened."

The plaintiff told defendant Westover that other people had told him that he engaged in anal sex with Tanya and raped her. Upon questioning, the plaintiff repeatedly told defendant Westover that "a long time ago" he "did her up the butt hole with [his] penis" and "shaved her." The plaintiff told defendant Westover that he could not remember anything about the incident because it happened "a long time ago," that he never touched Tanya after, and that he was not in Tanya's room on the night that he was accused of raping her. The

plaintiff told defendant Westover that he could not provide a written statement because he cannot write.

With the above facts in mind, the plaintiff's amended complaint contains three counts. In Count I, the plaintiff alleges that he was arrested and imprisoned without probable cause and in violation of his rights under the Fourth Amendment. In addition, the plaintiff alleges in Count I that Salem Township failed to train its officers in how to properly interrogate mentally disabled individuals and to properly investigate criminal allegations and establish probable cause. In Count II, the plaintiff alleges a state law claim for false arrest. Finally, in Count III, the plaintiff alleges state law claim for false imprisonment. In order to sustain any of these counts, the plaintiff must establish defendant Westover lacked probable cause to arrest him.

A claim under §1983 for false arrest/false imprisonment is grounded in the Fourth Amendment guarantee against unreasonable seizures. Garcia v. County of Bucks, 155 F.Supp.2d 259, 265 (E.D.Pa. 2001) (citing Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995)). To maintain a false arrest claim, the plaintiff "must show that the arresting officer lacked probable cause to make the arrest." Id. A false arrest claim will fail if there was probable cause to arrest for at least one of any of the offenses involved. Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007); see also Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) (holding that for an arrest to be

justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances"); see also Devenpeck v. Alford, 543 U.S. 146, 153 (2004). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under §1983 for false imprisonment based on a detention pursuant to that arrest." Groman, 47 F.3d at 636.

Just the same, state law claims of false arrest and false imprisonment require a plaintiff to show there was no probable cause to bring the charges. See Mills v. City of Harrisburg, 350 F. App'x 770, 774 (3d Cir. 2009) (non-precedential). Therefore, if there was probable cause to detain and arrest the plaintiff, it would mean that these claims are meritless.

Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested. United States v. Laville, 480 F.3d 187, 194 (3d Cir. 2007). Probable cause is determined by the facts and circumstances within the officer's knowledge at the time of the arrest. Id. It "does not depend on whether the suspect actually committed any crime." White, supra, 408 F. App'x at 598 (quoting Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005)). Only "a fair probability" that he did is required. Id. (quoting Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000)). Each case must be examined on its facts. Wilson, 212 F.3d at 790.

12

The claims brought by the plaintiff in this case often require consideration of the qualified immunity doctrine which shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under the qualified immunity doctrine, officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and the "right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). The court is not required to consider these inquiries sequentially. Pearson v. Callahan, 555 U.S. 223 (2009).

In determining whether a right is clearly established, the relevant inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. As such, the court "must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). The court may grant qualified immunity to a defendant if it is apparent that the defendant did

not violate rights that were clearly established at the time the defendant acted. Pearson, 129 S.Ct. at 820. In light of the fact that qualified immunity includes consideration of whether the law was clearly established at the time of the defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court which can often be resolved on summary judgment. See Montanex v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case, the plaintiff's brings federal constitutional and state law claims for false arrest and imprisonment related to his arrest by defendant Westover on the charge of incest. Defendant Westover argues, in part, that he is entitled to qualified immunity. In considering the defendant's claim of qualified immunity, it is worth noting that the actions taken by defendant Westover in charging the plaintiff were approved in advance by ADA Roberts. In charging the plaintiff, defendant Westover was entitled to rely upon ADA Robert's approval of the charges in concluding that his conduct was lawful and proper. "Under Pennsylvania law, . . . '[c]riminal proceedings initiated on the advice of counsel are . . . presumed to be supported by probable cause when the advice of counsel was sought in good faith and the advice was given after full disclosure of the facts to the attorney.'" Williams v. Fedor, 69 F.Supp.2d 649, 670 (M.D.Pa. 1999) This presumption applies even if counsel errs since "[t]he attorney's advice need not be correct." Id. See Pardue v.

14

Gray, 136 F. App'x 529, 532 (3d Cir. 2005). Thus, the fact that ADA Roberts approved that charges is substantial evidence of probable cause.

In fact, in order to defeat qualified immunity, the plaintiff must show that: (1) the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000). Upon review, the plaintiff does not make this showing.

The plaintiff argues that defendant Westover's affidavit of probable cause was materially misleading because he failed to include the extent of Tanya's and his mental disabilities. He further argues that defendant Westover failed to include exculpatory facts elicited during the plaintiff's interrogation and that the results of Tanya's rape kit were negative. Finally, the plaintiff argues that defendant Westover misrepresented that the plaintiff understood and knowingly waived his Miranda rights prior to the interrogation. However, the finding of probable cause is not defeated by these claims.

Initially, the affidavit of probable cause noted that Tanya was mentally challenged. Moreover, ADA Roberts testified that, although she did not initially know the extent of Tanya's disabilities, even after interviewing her, she "absolutely" believed that there was probable cause to support the charges

15

against the plaintiff. The plaintiff has presented no facts to establish that Tanya had such mental limitations as to be unbelievable. Moreover, the plaintiff has cited to no legal precedent which indicates that an officer is prohibited from relying on the statements of a mentally challenged individual in making a probable cause determination.

As to the plaintiff's mental capacity, this was of no moment, as his statement was unnecessary to establish probable cause. Tanya's statement to defendant Westover, which was repeated to her sister-in-law, Kristina, and to the hospital, as well as Kristina's corroborating statement that she saw the plaintiff outside of Tanya's bedroom door fastening his pants was sufficient to establish probable cause in and of itself. See Morrison v. Schultz, 270 F. App'x 111, 116 (3d Cir. 2008) (Where "a police officer possesses 'knowledge of a credible eyewitness . . . a reasonable jury could not find that [he] lacked knowledge of sufficient facts to establish probable cause to arrest.'") (quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000)).

While the plaintiff challenges the fact that defendant Westover left out of the probable cause affidavit exculpatory evidence in the form of the plaintiff's statements in which he indicated that he had not been in Tanya's room on the night in question and did not touch her, the fact remains that the plaintiff admitted several times that he had anal sex with Tanya "a long time ago." This is consistent with Tanya's statement that the plaintiff tried to rape

16

her when she was 13 or 14 years old and provides probable cause for a charge of incest. Moreover, defendant Westover was not required to credit the plaintiff's self-serving statements. See Stolarik v. City of Wilkes-Barre, 2013 U.S.Dist. LEXIS 155788, *12 (M.D.Pa. Oct. 30, 2013).

The plaintiff also argues that the negative rape kit results defeat any finding of probable cause. As discussed above, the rape kit results were not necessary to establish probable cause as defendant Westover had the statements of Tanya and her sister-in-law to establish sufficient probable cause for the charges. Moreover, ADA Roberts explained that negative rape kit results are common because events typically occur between the sexual assault and the examination which prevent any positive findings, such as showering, changing clothes, going to the bathroom, etc. Again, the plaintiff cites to no precedent that an officer must include evidence of rape kit results in an affidavit of probable cause when charging a sex crime.

In considering the facts of the this case, the court finds that defendant Westover is entitled to qualified immunity since probable cause existed to charge the plaintiff with incest. Defendant Westover presented the evidence to ADA Roberts who authorized the filing of charges. The plaintiff has not established that defendant Westover knowingly or deliberately or with a reckless disregard for the truth, made false statements or omissions that created a falsehood or that such statements or omissions were material or

17

necessary to a finding of probable cause. Therefore, the plaintiff's federal constitutional and state law claims for false arrest and imprisonment fail as a matter of law and summary judgment will be granted in defendant Westover's favor on these claims.

With regard to the plaintiff's claim against Salem Township, a muncipality's liability is derivative of the underlying officer's liability. <u>LA v. Heller</u>, 475 U.S. 796, 799 (1986). Since the court finds that the plaintiff suffered no violation of his constitutional rights or state law rights since his arrest was supported by probable cause, the court further finds that the defendant, Salem Township, is not liable under a theory of municipal liability. Therefore, summary judgment will also be granted in favor of the defendant, Salem Township.

## IV.   CONCLUSION

Based upon the foregoing, the defendants' motion for summary judgment (Doc. 40) will be **GRANTED** in its entirety. An appropriate order shall issue.

s/ *Malachy E. Mannion*<br>
**MALACHY E. MANNION**<br>
**United States District Judge**

**Date:  September 30, 2019**

16-1513-02.wpd